# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| RANDALL REED, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | CAUSE NO.: 2:16-CV-406-JEM |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
|     Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Randall Reed on June 4, 2015, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], filed by Plaintiff on July 10, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for benefits or further proceedings. On October 18, 2017, the Commissioner filed a response, and on November 1, 2017, Plaintiff filed a reply.

### I.    Procedural Background

On December 3, 2012, Plaintiff filed an application for benefits alleging that he became disabled on June 1, 2008. Plaintiff's application was denied initially and upon reconsideration. On December 10, 2014, Administrative Law Judge ("ALJ") William E. Sampson held a hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On February 25, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant met the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date.

3. The claimant had the following severe impairments: residuals from ankle fractures, degenerative joint disease of the left shoulder, degenerative disc disease of the spine, osteoarthritis, and hypertension.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work, except that the claimant can lift and/or carry 20 pounds occasionally and 10 pound frequently, can sit up to six hours of an eight-hour workday, and can stand and/or walk up to six hours of an eight-hour workday. The claimant can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch, but can never crawl. The claimant can occasionally fully extend his arms bilaterally. The claimant must avoid concentrated exposure to extreme cold. The claimant can occasionally perform flexion of the neck. Due to pain and side effects of pain medication, the claimant is limited to simple, routine, and repetitive tasks. The claimant requires a sit-stand option cut cannot go off-task when alternating positions.

6. The claimant is unable to perform past relevant work.

7. The claimant was 39 years old, defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because the claimant is "not disabled," whether or not he has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2008, through the date of the decision.

The Appeals Council denied Plaintiff's request for review and denied his request to reopen the decision, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.   Standard or Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial

3

evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.  Analysis

Plaintiff argues that the ALJ erred in failing to explain why he rejected the physical limitations described by the examining physician. The Commissioner argues that the ALJ's reasoning was well-supported. In December 2014, Dr. Perez performed an examination of

4

Plaintiff, reporting, among other things: limitations on range of motion for Plaintiff's spine and extremities; antalgic gait; inability to tandem walk, stand on toes, or stand on heels; and diagnoses of a number of physical impairments. Dr. Perez also completed a Medical Source Statement describing work-related limitations including the amount of time Plaintiff could sit, stand, and walk, in a workday, and limitations as the use of Plaintiff's right hand. The ALJ discounted the opinion, giving it no weight on the grounds that it was inconsistent with Dr. Perez's physical examination.

There are multiple difficulties with the ALJ's treatment of Dr. Perez's opinion. The first is the ALJ's stated reasons for discounting it. He pointed out three supposed inconsistencies with the Medical Source Statement. The first is that the limitation of sitting, standing, and walking to fifteen minutes each "is not supported by her examination of the claimant," with no specificity regarding what in the report of examination was inconsistent with the limitations, a failure of analysis that leaves the Court unable to follow the logic to the ALJ's conclusions. *Hughes v. Astrue*, 705 F.3d 276, 277–78 (7th Cir. 2013) (finding error where the ALJ "disregarded [the examining physician]'s entire report, on the unexplained ground that it was 'not consistent with the medical evidence of record' and 'seem[ed] to be based solely on the [applicant's] subjective complaints.' The judge did not indicate what 'medical evidence of record' he had in mind and he ignored the fact that [the physician] had conducted a 90–minute examination of the applicant"); *see also Roddy*, 705 F.3d at 637 ("The ALJ should have, but did not, explain why [a physician]'s opinion about the severity of [the plaintiff]'s pain is inconsistent with [the medical] findings."). Similarly, the ALJ found it inconsistent that Dr. Perez included limitations on Plaintiff's use of his dominant right hand, but not his left hand, and the ALJ concluded that some of the limitations

were "based upon responses from the claimant, because there is no indication that the claimant could not perform [these] activities." However, the examination showed reduced grip strength in Plaintiff's right hand, as well as wrist, shoulder and back pain, and the ALJ does not include any explanation of the supposed inconsistency. The other reported inconsistency is related Plaintiff's use of a cane. The ALJ wrote, "[D]espite stating in her examination that the claimant did not require an assistive device, then states in the Medical Source Statement that he sometimes would need to use a cane." Again, it is not apparent to the Court how needing a cane sometimes, especially in a work environment, is inconsistent with not requiring an assistive device while undergoing a physical examination at a doctor's office. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."); *see also* SSR 96-7p, 1996 WL 374186, at *8 (Jul. 2, 1996) ("The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms.").

ALJs are directed to "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [him]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Likewise, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470 (finding error where "the ALJ did not explain how the evidence in the record contradicts [the examining physician]'s diagnosis"); *see also Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016) ("[T]he problem is that the ALJ has not pointed to any logical reason to

6

discount the opinions of the only examining mental-health professionals, one of whom was the state agency's own consultative examiner, in favor of a non-examining reviewer."). In this case, the ALJ gave no weight to the opinion of the only examining physician whose opinion he discussed in detail, without identifying any evidence in the record that is contrary to its conclusions. He stated instead that he gave "some weight" to a previous consultative examination from January 2013 and "some weight" to the opinions of non-examining consultants who drafted their opinions in February and May of 2013. However, he did not explain how these opinions are inconsistent with that of Dr. Perez, and did not address the fact that these opinions did not account for the degenerative nature of Plaintiff's impairments or the additional medical records that had been obtained, including the opinions of an examining neurologist.

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ did not identify any source at all, let alone an examining source, to whom he gave more than "some weight," despite the general requirement to give more weight examining sources. Instead, he relied primarily on the agency physicians who merely reviewed Plaintiff's medical records more than eighteen months before the hearing. Not only has he failed to identify any logical reason to completely reject Dr. Perez's Medical Source Statement, but the failure to identify any treating or examining opinion entitled to weight leaves the Court unable to trace the path of the ALJ's reasoning from the medical evidence to his conclusion regarding Plaintiff's

limitations. Particularly given his unexplained findings of "inconsistencies" between Dr. Perez's examination and report of limitations, the Court is concerned that the ALJ substituted his own medical determination for that of the actual medical professionals whose opinions appear in the record, in violation of the Seventh Circuit Court of Appeals' repeated warning that ALJs are not to make their own independent medical findings and should not "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Plaintiff argues that the ALJ's reason for disbelieving Plaintiff's own testimony are also in error. The Commissioner argues that the ALJ reasonably found Plaintiff to be less than reliable. The ALJ pointed to Plaintiff's ability to perform some work after his alleged date of disability, his level of daily activities, and the fact that he did not always take medications as prescribed as reasons to disbelieves his report of pain and other limitations. The Court is concerned by these conclusions.

Plaintiff reported working some odd jobs after he stopped working full time. However, attempting to work after the onset of disability does not necessarily mean that a person is not disabled. As the Seventh Circuit has noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[A] claimant's dogged efforts to work beyond her physical capacity

would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms."); *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) ("A desperate person might force herself to work – or . . . certify that she is able to work – but that does not necessarily mean she is not disabled."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). In this case, Plaintiff testified that he continued to attempt to do the construction work he was used to, but as he had more and more difficulties with parts of the work and experienced more limitations in his abilities, the work dried up. He continued to try to do some odd jobs that were shorter in duration and did not involve scaffolding or lifting heavy weights, but he testified that it had been several years since he had even been able to do those small jobs. Rather than considering Plaintiff's failed attempts to continue working as indicative of his veracity, the ALJ used them to find him less than believable.

Similarly, Plaintiff argues that the ALJ over-relied on Plaintiff's ability to perform some activities of daily living to support the finding that he can work, particularly given Plaintiff's representations that he had significant difficulties with chores and took breaks, but felt that he needed to help out the people whose homes he stays in, since he has no source of income for a residence of his own. The Seventh Circuit Court of Appeals has repeatedly criticized discounting a claimant's reported symptoms on the basis of an ability to take care of personal hygiene, children, or basic household chores. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ

9

here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). To the extent that the ALJ was also using Plaintiff's ability to perform some activities of daily living as indicating an ability to perform full-time work, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

Likewise, the ALJ found Plaintiff to be less than believable because he did not always take medication as prescribed. However, when failure to comply with medical treatment recommendations is used as a factor in determining whether a claimant's statements regarding his symptoms are credible, an ALJ is required make a determination about whether the lack of treatment is justified and develop the record accordingly. *See* SSR 96-7p at *7; *Shauger*, 675

F.3d at 696 ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). As Plaintiff argues, the ALJ did not ask Plaintiff about his failure to take medication as prescribed, despite indications in the record that he lacked insurance and reliable transportation.

On remand, the ALJ is instructed to draw a logical bridge from the evidence as it actually appears in the record to his conclusions about Plaintiff's RFC, and must thoroughly address the medical evidence in the record, including properly weighing the reports of examining physicians in accordance with the regulations. He is also reminded of the need to fully review all of the medical evidence in the record and to obtain additional information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996));  20 C.F.R. §§ 404.1512(d)(1), 416.919(b)).

### V. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 15th day of March, 2018.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN

UNITED STATES DISTRICT COURT

cc: All counsel of record